Leroy W. ELMORE, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 45A03–9605–PC–165.

Court of Appeals of Indiana.

Nov. 24, 1997.

214

Mark C. Webb, Symmes Voyles Zahn Paul & Hogan, Indianapolis, for Appellant–Petitioner.

Jeffrey A. Modisett, Attorney General, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, for Appellee–Respondent.

**OPINION**

HOFFMAN, Judge.

Appellant-petitioner Leroy Elmore appeals from the denial of his petition for postconviction relief. Elmore was convicted of theft, a Class D felony, and was found to be a habitual offender. The facts, as found by our supreme court in *Elmore v. State*, 515 N.E.2d 1388 (Ind.1987), are as follows:

On December 17, 1985, a 1985 Century Buick automobile belonging to Leroy Dick was stolen while parked at a place of business on Broadway in Gary, Indiana. Before the police received the report of the stolen vehicle, they received another report to proceed to 324 Tyler Street in Gary because an automobile stripping was in progress. Officer Carl Johnson responded to that call accompanied by his partner. They proceeded down the alley at that address and noticed fresh tire marks in the snow leading into a garage at an abandoned house. There were no tracks leading from the garage.

Officer Johnson and his partner got out of the police car and went to the closed door of the garage. They could hear voices inside the garage and what sounded like a tire jack being operated. The officers entered the garage and arrested appellant and his accomplice. As this was being accomplished, they received the report of the stolen automobile on the police radio. The description matched the automobile in the garage.

Officer Johnson testified that the automobile was jacked up, that the steering column was 'busted' near the turn signals and that the lug nuts and hubcaps were lying on the ground. It was also discovered that the automobile's radio and battery were missing. The trunk lock had been 'popped' and the keys to the automobile were not in the area. Dick testified that the automobile suffered additional damage in that: the door locks had been 'popped out'; the contents of the glove compartment had been placed on the seat; and the front panel had been torn apart.

*Id.* at 1389–90.

On appeal, Elmore raises four issues for our review:

(1) whether vacation of one of 13 related felonies entitled Elmore to vacation of the habitual offender determination;

(2) whether fundamental error occurred in the habitual offender proceeding;

(3) whether Elmore waived the issue of effective assistance of trial counsel; and

(4) whether Elmore was denied effective assistance of appellate counsel.

■■■ Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind.Post–Conviction Rule 1(5); *Madden v. State*, 656 N.E.2d 524, 525 (Ind. Ct.App.1995), *trans. denied.* In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting the post-conviction court's judgment. *Weatherford v. State*, 619 N.E.2d 915, 916 (Ind.1993). To succeed on appeal from the denial of relief, the post-conviction petitioner must show that the evidence is without conflict and leads only to a conclusion opposite that of the post-conviction court. *Madden*, 656 N.E.2d at 525–526.

■■■ The purpose of post-conviction relief is not to provide a substitute for direct appeal, but to provide a means for raising issues not known or available to the defendant at the time of the original appeal. *Id.* at 526. If an issue was available on direct appeal but not litigated, it is waived. *Id.* An exception to the doctrine of waiver arises when errors are so blatant and serious that to ignore them would constitute a denial of fundamental due process, i.e., fundamental error. *Id.* The fundamental error doctrine permits a reviewing court to consider the merits of an improperly raised error if the reviewing court finds that the error was so prejudicial to the rights of the appellant that he could not have had a fair trial. *Id.*

■■■ In order to sustain a finding that a defendant is a habitual offender, the State must prove that the defendant was guilty of two prior unrelated felony offenses, the second of which was committed after the defendant was convicted and sentenced upon the first charge. IND. CODE § 35–50–2–8

(1985 Supp.). The State may offer proof of more than two prior convictions, with the additional convictions considered to be harmless surplusage. *Spivey v. State*, 638 N.E.2d 1308, 1310 (Ind.Ct.App.1994). In the instant case, the State offered proof of 14 prior convictions. After the jury determined that Elmore was a habitual offender, however, one of the 14 convictions was vacated. Elmore now claims that since one of the prior convictions has been set aside and the jury did not indicate which of the prior felonies it based the habitual offender status on, he is entitled to have the habitual offender status set aside.

In *Eldridge v. State*, 498 N.E.2d 12 (Ind. 1986), the defendant was found to be a habitual offender after a hearing in which the State presented proof of three prior felonies. One of the three predicate felonies was subsequently set aside in a post-conviction proceeding. The defendant argued that the subsequent setting aside of one of the three predicate convictions rendered his habitual offender status void. Our supreme court rejected this argument, stating:

> Although appellant might have insisted at his original trial that the jury designate which two of the three felonies they relied upon to fix his habitual offender status, he did not do so. At this late date we must assume that the jury found that appellant had been convicted, sentenced and imprisoned upon all three of the felonies charged. The fact that appellant subsequently was successful in setting aside one of the three convictions still leaves two convictions established by the evidence in the original trial.

*Id.* at 13.

In *Nash v. State*, 545 N.E.2d 566 (Ind. 1989), however, the State offered evidence of three prior convictions: theft, auto banditry, and interstate transport of a motor vehicle. During jury deliberations, the defendant informed the trial court that the auto banditry conviction had been set aside by the Court of Appeals on the ground that it and the theft conviction were one and the same. The jury returned a general verdict form indicating its conclusion that the defendant was a habitual offender. The defendant argued that the

determination was void because the State presented evidence of a felony which was not, in fact, a valid conviction.

Our supreme court rejected the State's argument that, notwithstanding that one of the three prior felonies was an invalid predicate felony, the other two were valid predicates upon which the habitual offender determination could rest. In so doing, the court stated the following:

> Here, the jury was instructed that appellant *was convicted on a single day* of two felonies, theft and automobile banditry. Both satisfied the definition of prior unrelated felony conviction in the instructions since both occurred 'separate and apart from any subsequent felony conviction and sentence,' namely the later federal one for interstate transportation, and both cannot meet the correct statutory criteria ·in a single case. The jury received no instruction that it could not consider the theft and automobile banditry convictions as separate and unrelated and could have rationally concluded that those two convictions alone could support a verdict of habitual criminal.

*Id.* at 568 (Emphasis added). The court further found that *Nash* (where the habitual issue was brought on direct appeal) was distinguishable from *Eldridge* because *Eldridge* was a postconviction case commenced years after the defendant's conviction. The court opined: "the petitioner does not establish grounds for post-conviction relief by proving that one of three felony convictions was set aside subsequent to the original habitual offender trial where all three such convictions were alleged and sufficiently proved at that original trial and satisfied the statutory criteria of I.C. 35–50–2–8." ·*Id.* at 568–69.

In *Waye v. State*, 583 N.E.2d 733 (Ind. 1991), the State offered evidence of three prior convictions during the habitual offender stage of trial. On a general verdict form, the jury returned a finding that the defendant was a habitual offender. The defendant appealed on the ground that one ·of the three prior convictions was actually a misdemeanor. The State argued that the habitual offender finding was sustainable because the jury was presented with evidence of two

proper predicate felonies, notwithstanding that the third conviction was not a proper predicate. The court rejected the State's contention on the ground that the misdemeanor conviction was not admissible during the habitual offender phase for any reason, and the jury was erroneously instructed that the misdemeanor was, in fact, a felony. *Id.* at 735. The court reasoned that the general verdict form rendered it impossible to discern whether the jury relied on the misdemeanor in finding the defendant a habitual offender. The court concluded that " '[a] general verdict cannot stand when the case was tried and submitted on two theories, one bona fide and the other not.' " *Id.*

In *Miller v. State*, 275 Ind. 454, 417 N.E.2d 339 (1981), a case similar to *Waye*, the State filed a habitual offender count against Miller alleging that he had prior convictions for burglary in 1956 and 1967. Immediately before proceeding with the habitual offender proceedings, the State was allowed, over Miller's objection, to amend the habitual offender count to include convictions for rape and burglary even though Miller had not yet been sentenced upon the counts. The jury subsequently found Miller to be a habitual offender upon the charge which alleged the four prior convictions and upon evidence as to all four. Our supreme court determined, however, that it was reversible error for the trial court to permit 'the amendment of the habitual offender charge against Miller and to include counts upon which he had not been sentenced. In so doing, the court stated that:

> Notwithstanding that competent evidence was admitted to support a finding that the defendant "had accumulated two (2) prior unrelated felony convictions," under this state of the record, it cannot be discerned which of the four alleged prior convictions provided the factual basis for the jury's determination.
>
> A general verdict can not stand when the case was tried and submitted on two theories, one bona fide and the other not. [Citations omitted].

*Id.* at 460, 417 N.E.2d at 343.

In *Spivey*, the State offered proof of three prior convictions. After the jury determined

that Spivey was a habitual offender, however, one of the three convictions was vacated upon constitutional grounds. This Court found that Spivey's habitual offender finding "must be reversed" in view of the general verdict form because it was impossible to know whether the jury relied upon the vacated conviction in concluding that Spivey was a habitual offender. *Id.* at 1312. In so finding, this Court stated:

It is clear, however, that courts have not subsequently sanctioned that which was implied in *Eldridge,* i.e., that a defendant has the burden to 'insist' at trial that the jury designate which two felonies were relied upon to fix a defendant's habitual criminal status when evidence of more than two was offered, and that failure to so insist defeats a challenge premised upon the ground that at least one of the felonies is no longer a proper predicate for habitual offender purposes. It is equally clear that the State may prove more than two prior convictions in seeking an habitual offender enhancement, but that such practice carries with it the danger that 'surplus' felonies may invalidate an habitual offender determination if determined not to conform to statutory guidelines. Indeed, the trend of Supreme Court decisions on the subject since *Eldridge* reflects a departure from the view that an habitual offender determination will stand so long as there remain two conforming predicate convictions which were proved at trial, notwithstanding that the verdict was general and other convictions proved as predicates were subsequently determined to be nonconforming. *See Waye,* [583 N.E.2d 733]; *Nash,* [545 N.E.2d 566]; *Miller [v. State,* 275 Ind. 454, 417 N.E.2d 339].

*Id.* at 1311–12. In reaching its conclusion, however, the *Spivey* decision fails to take into account our supreme court's decision in *Richards v. State,* 535 N.E.2d 549 (Ind.1989).

In *Richards,* one of the three felonies alleged by the State during the habitual phase of Richards' trial had taken place prior to the sentencing on one of the other felonies. Nevertheless, our supreme court determined that since two of the alleged convictions clearly conformed to the habitual offender

statutory requirement, Richards' status as a habitual offender was supported by the record. *Id.* at 550. In his concurrence, Chief Justice Shepard differentiated *Richards* from *Miller,* stating:

The case at bar is a different one than *Miller v. State* (1981), 275 Ind. 454, 417 N.E.2d 339, upon which the dissent relies. In *Miller,* the trial court admitted evidence of two convictions for which Miller had not even been sentenced yet on the day of his habitual offender trial. These were not merely 'out of sequence.' They were not admissible on any grounds.

By contrast, Richards' three convictions were all admissible. One was an offense from the mid–1970s. Two others were later offenses whose dates intertwined such that they were not by themselves 'two prior unrelated felonies.' However, either of them could combine with the first conviction to establish the necessary predicates for an habitual finding. These last two convictions were, in effect, alternative proofs offered by the prosecution. A jury properly instructed on the definition of 'two prior unrelated felonies' is perfectly able to determine from this evidence whether the State has met its burden of proof. The issue on appeal is simply whether the evidence favorable to the judgment is adequate to support it.

*Richards,* 535 N.E.2d at 551.

Although at first glance, the ruling in *Richards* appears to contradict the ruling in *Nash, Richards* is distinguishable. In *Richards,* the defendant committed one of the predicate felonies prior to the sentencing of one of the other felonies. From the facts presented in the case, it appears that the convictions and sentencings for the two offenses took place on different days. When one of Richards' felonies was vacated, another *valid* felony was left upon which the habitual offender determination could be based. In *Nash,* however, the defendant was convicted and sentenced for two felonies, arising out of a single episode, on a single day. Since both felonies were sentenced on a single day, in a single case they both could not meet the statutory criteria requiring prior unrelated felony convictions. Only one of the

felonies could have combined with the prior interstate transportation of stolen vehicle felony. Therefore, without an instruction stating that the jury *could not* consider the two felony convictions as separate and unrelated, Nash's habitual finding could not stand when one of the two felony convictions that was sentenced on a single day was vacated.

Here, we find that the reasoning set forth in *Richards* is most applicable to the instant case. During the habitual phase of Elmore's trial, the State presented evidence establishing that at the time he committed the instant offense, Elmore had been convicted of the following prior felonies: second-degree burglary under cause number CR–73–214 ("214"); two counts of theft under cause number 2CR–85–378–239 ("239"); two counts of theft under cause number 2CR–284–978–811 ("811");[1] and nine counts of theft under cause number 2CR–290–078–820 ("820"). Under cause number 214, Elmore was convicted and sentenced for one count of theft on October 3, 1975. Elmore committed the felonies listed under cause numbers 239, 811, and 820 between March 14, 1978 and August 29, 1978. He was sentenced for all the counts under those cause numbers on May 1, 1979.

Although the jury was instructed that Elmore had been convicted and sentenced on a single day of two counts under cause number 239, two counts under cause number 811, and nine counts under cause number 820, the felonies were committed on different days. Therefore, at the time of the habitual phase, all 13 felonies satisfied the definition of prior unrelated felony convictions since they all occurred separate and apart from Elmore's second–degree burglary conviction which occurred on March 11, 1986. Applying the reasoning set forth in *Richards*, any one of the 13 felonies could have combined with the theft conviction under cause number 214 to support the habitual offender determination. *Richards*, 535 N.E.2d at 551 (Shepard, C.J., concurring). The other felony convictions were, in essence, alternative proofs offered by the prosecution. *Id.*

We, therefore, find that because 12 other felony convictions conformed to the statutory requirement, the fact that one of the convictions did not so conform is not grounds for reversal. The evidence in this case clearly indicates that Elmore's habitual offender determination still stands. The trial court was correct in ruling that his petition for post-conviction relief be denied.

Elmore next contends that several errors occurred during his habitual offender proceeding. Specifically he argues that: 1) he was prejudiced when the trial court read to the jury final instructions which incorrectly alleged that Elmore had been convicted of crimes for which he had not been charged; 2) the trial court failed to properly instruct the jury on the elements of the habitual offender charge; 3) the State's evidence repeatedly referred to extraneous criminal acts which were not charged as prior unrelated felonies in the habitual offender information; and 4) the State presented evidence at the habitual phase of the trial in a cumulative, disorganized, and misleading fashion.

 Elmore first argues that he was prejudiced when the trial court read to the jury, in a final instruction, the habitual offender information which alleged that Elmore had been convicted of three counts of theft under cause number 811. As was stated above in footnote number one, the State only presented evidence that Elmore had been convicted of two counts of theft under cause number 811. However, an error in the instruction of the jury does not require reversal if the conviction is clearly sustained by the evidence and the jury could not properly have found otherwise. *Burton v. State*, 526 N.E.2d 1163, 1166 (Ind.1988). Here, although Instruction No. 2 stated that Elmore "was convicted of and sentenced for the felonies of Theft (3–counts) ... under cause number [811]," the evidence presented dur-

---

1. Although Final Instruction No. 2 stated that Elmore had been sentenced and convicted for 15 counts of theft, one count under cause number 214, two counts under cause number 239, three counts under cause number 811, and nine counts under cause number 820, the State only present-

ed evidence that Elmore had been convicted for two counts of theft under cause number 811. Thus, the sum of Elmore's prior convictions presented during the habitual phase of his trial totaled 14.

ing the habitual phase of Elmore's trial clearly showed that Elmore was convicted and sentenced for only two counts of theft under cause number 811. Because the State only offered evidence of two counts of theft, the jury could not have found that Elmore committed three counts of theft. Elmore fails to demonstrate prejudice and, thus, presents no reversible error on this issue.

 Elmore further argues that he was prejudiced because the information, as read to the jury in the final instruction, contained a typographical error which referred to cause number 214 as cause number "241." According to Elmore, the error could have caused the jury to reasonably conclude that this was an additional theft conviction. However, during the habitual phase of Elmore's trial, the State presented evidence that clearly showed that Elmore had been convicted and sentenced for one count of theft under cause number 214, two counts of theft under cause number 239, two counts of theft under cause number 811, and nine counts of theft under cause number 820. Therefore, we do not find that the typographical error amounted to reversible error.

 Elmore next argues that the trial court failed to properly instruct the jury on the elements of the habitual offender charge. Specifically, Elmore avers that the trial court failed to instruct the jury 1) on the definition of "unrelated" and 2) that the prior felony convictions must have occurred in a certain sequential order. However, this allegation of error is waived by Elmore's failure to object to the trial court's instructions. *Burton,* 526 N.E.2d at 1165.

Waiver notwithstanding, Elmore has failed to show how he was prejudiced by the trial court's instructions. During the habitual phase of Elmore's trial, the trial court properly instructed the jury as to the definition of "prior unrelated felony conviction" as follows:

### INSTRUCTION NO. 7

The term 'prior unrelated felony conviction' means a felony conviction for which the person is convicted and sentenced, separate and apart from any subsequent felony conviction and sentence.

Moreover, the trial court also instructed the jury as follows:

### INSTRUCTION NO. 5

If the State failed to prove beyond a reasonable doubt the defendants[2] were convicted and sentenced on two (2) prior unrelated felonies, you should find the defendants not to be habitual offenders.

If the State has proved beyond a reasonable doubt that the defendants were convicted and sentenced on two (2) prior unrelated felonies, but you further find that one (1) of such felony convictions has been set aside or either of the defendants has been pardoned upon one (1) of such felony convictions, you should find that the defendant not to be an habitual offender.

If the State has proved beyond a reasonable doubt the defendants were convicted and sentenced on two (2) prior unrelated felonies, you should find the defendants to be habitual offenders.

We find no error here as this instruction is one of the Indiana Pattern Jury Instructions and is phrased in alternatives which do not bind the jury to one course of action. *Maisonet v. State,* 448 N.E.2d 1052, 1056 (Ind. 1983).

 Elmore next contends that his habitual offender determination should be reversed due to the admission of several exhibits disclosing charges for which he was never convicted. However, evidence relative to proof of the crime charged is admissible even if that evidence also tends to prove the accused's commission of an uncharged crime. *Golden v. State,* 485 N.E.2d 51, 56 (Ind.1985). Furthermore, even the erroneous admission of evidence will not result in reversal of the judgment if the evidence supporting the jury's findings is substantial or overwhelming. *Id.* Here, the exhibits introduced during the habitual phase of Elmore's trial clearly showed that he was previously convicted of 14 felonies. Since the evidence supporting Elmore's habitual determination was substantial, there was no reversible error in the exhibits which indicated the Elmore was charged with other felonies.

2. Elmore was tried jointly with co-defendant Billy Nash.

■ Elmore further contends that the habitual phase of his trial was encumbered by the exceedingly confusing presentation of evidence. The gravamen of Elmore's argument appears to be that the State overwhelmed the jury with duplicative and cumulative evidence. The exhibits introduced during the habitual phase of the trial, however, consisted of certified copies of court records demonstrating Elmore's convictions for prior unrelated crimes and records demonstrating a commitment to the correctional facility for the same charges.

■ The fact that items of evidence are cumulative does not merit reversal of the trial court unless there is a showing of an abuse of discretion. *Russell v. State,* 519 N.E.2d 549, 552 (Ind.1988). Considering that the exhibits were in proper form to be used to prove Elmore's habitual offender status, we fail to see an abuse of discretion by the trial court or fundamental prejudice to Elmore in the admission and sequence of admission of the exhibits.

■ Elmore's final argument is that the post-conviction court erred in determining that his ineffective assistance of trial counsel claim was waived. However, insofar as Elmore has not demonstrated that this issue was unavailable or unascertainable at the time of his direct appeal, the issue is waived. *Holt v. State,* 656 N.E.2d 495, 496 (Ind.Ct. App.1995), *trans. denied.*

■ Elmore also maintains that his appellate counsel was ineffective because, like trial counsel, he failed to raise the issues ultimately raised in the post-conviction petition. Appellate review of the effectiveness of appellate counsel's representation uses the same standard as is applied to trial counsel. *Kappos v. State,* 577 N.E.2d 974, 978 (Ind.Ct. App.1991), *trans. denied.* Having found no reversible error, appellate counsel was not ineffective.

Affirmed.

GARRARD and STATON, JJ., concur.